Sxb

AO 106 (REV 4/10) Affidavit for Search Warrant · · · · · · · · · · · · · AUSA Christine M. O'Neill, (312) 353-4305

# FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MAR 25 2019

In the Matter of the Search of: · · · · · · · · · · · Case Number:

The three cellular telephones, further described in
Attachment A

MAGISTRATE JUDGE, JEFFREY COLE
UNITED STATES DISTRICT COURT

19M206

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Jacob H. Bledsoe, a Special Agent of the Drug Enforcement Administration, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

### See Attachment A

located in the Northern District of Illinois, there is now concealed:

**DOCKETED**
MAR 2 6 2017

### See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is evidence and instrumentalities.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841 and 846 | narcotics |

The application is based on these facts:

### See Attached Affidavit,

Continued on the attached sheet.

S/A _____ #8123

_Applicant's Signature_

JACOB H. BLEDSOE, Special Agent, Drug Enforcement
Administration _____
_Printed name and title_

Sworn to before me and signed in my presence.

Date: March 25, 2019 _____

_Judge's signature_

City and State: Chicago, Illinois _____

JEFFREY COLE, U.S. Magistrate Judge _____
_Printed name and title_

UNITED STATES DISTRICT COURT     )
     )
NORTHERN DISTRICT OF ILLINOIS     )

## AFFIDAVIT

I, Jacob H. Bledsoe, being duly sworn, state as follows:

1.     I am a Special Agent with the Drug Enforcement Administration. I have been so employed since approximately 2006. I am currently a supervisor assigned to an enforcement team with the Chicago High Intensity Drug Trafficking Area ("HIDTA") program.

2.     As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances.

3.     I have received training in the area of narcotics investigations, money laundering, financial investigations and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

4.     I have participated in investigations that have led to the issuance of search warrants involving violations of narcotic laws. These warrants involved the search of locations including: residences of targets, their associates and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, bank safe deposit boxes, cellular/camera phones, and computers. Evidence, searched for, and recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized there from, monetary instruments and various assets that were purchased with the proceeds of the drug trafficking. I have participated in the execution of multiple federal search warrants.

5.     This affidavit is made in support of an application for a warrant to search, a white and rose gold iPhone Model A1586, bearing FCC ID BCG-E2816A ("**Subject Phone 34**"), a black Motorola flip phone Model V860, bearing MSN J686QN3236 ("**Subject Phone 35**") and a black and silver Alcatel cellular telephone, bearing serial number HQJE54AP4MWGOM4 ("**Subject Phone 36**") (collectively, the "**Subject Phones**") for evidence and instrumentalities described further in Attachment B, concerning narcotics offenses, in violation of Title 21, United States Code, Sections 841 and 846.

6.     The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included

2

each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846, are located within the Subject Phones.

## I. FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT PHONES

1.     On or about March 5, 2019, a criminal complaint and arrest warrant were issued in 19 CR 201 alleging that MICHAEL ROBINSON (a/k/a "Tootie"), THOMAS CLEVELAND (a/k/a "Dookie"), FREDERICK GILES (a/k/a "Littles" and "James"), WILLIE BLAIR, LAWRENCE CLARK, CARDELL COLEMAN, JOLISA GAINES, D'ANGELO GILES (a/k/a "Big D"), TYRELL KELLY (a/k/a "Rell"), KEITH MANNING, AMELIA SMITH (a/k/a "Millie"), DEVONTE SMITH (a/k/a "Harry"), KAJUAN SMITH, and DESMOND WHITE (collectively "defendants") have violated Title 21, United States Code, Section 846. More specifically, as described in ¶¶ 3-17 below, which were pulled from the complaint in 19 CR 201, Magistrate Judge Sunil Harjani found probable cause to believe that ROBINSON was the leader of a heroin hotline conspiracy in which ROBINSON used a dispatch phone to direct other members to deliver heroin to various customers. As explained in ¶ 19 below, a location order for SEAN Phone 2, which was used extensively in furtherance of the narcotics conspiracy detailed in 19 CR 201, led law enforcement to ROBINSON's location.

2.     As explained below, on March 7, 2019, during the arrest of a subject in this investigation, law enforcement recovered three cellular telephones – namely, a

3

white and rose gold iPhone Model A1586, bearing FCC ID BCG-E2816A ("**Subject Phone 34**"), a black Motorola flip phone Model V860, bearing MSN J686QN3236 ("**Subject Phone 35**") and a black and silver Alcatel cellular telephone, bearing serial number HQJE54AP4MWGOM4 ("**Subject Phone 36**") ("the **Subject Phones**").

        **A.**      **Complaint Allegations**

                **1.**      **Summary of the Conspiracy**

        3.      Since June 2017, the DEA and the Chicago Police Department (CPD) have been investigating a drug trafficking organization operating in Chicago referred to as the SEAN DTO. Most of the SEAN DTO's members are also members of a Chicago-based faction of the Undertaker Vice Lords (UVLs) street gang.[1] The SEAN DTO's narcotics distributions work by way of a narcotics-ordering telephone hotline. Narcotics customers call a designated telephone number that is operated by various members of the SEAN DTO to arrange for purchases of heroin, most of which is fentanyl-laced. The SEAN DTO then dispatches its many distributors to various locations on the west side of Chicago to conduct transactions with narcotics customers. The hotline operators/dispatchers often refer to themselves as "Sean," among other names.

---

[1] Law enforcement believes that the following individuals are members of the UVLs based on self-identification in the course of prior arrests, gang-related tattoos, and/or gang-related social media posts: MICHAEL ROBINSON, THOMAS CLEVELAND, FREDERICK GILES, D'ANGELO GILES, TYRELL KELLY, KEITH MANNING, DEVONTE SMITH, KAJUAN SMITH, and DESMOND WHITE.

4.      The investigation revealed that, from approximately June 2017 until August 2018, the SEAN DTO used telephone number (312) 590-7584 ("SEAN Phone 1") as one of its narcotics hotlines.  After that, the SEAN DTO used telephone number (312) 485-9160 ("SEAN Phone 2," collectively the "SEAN Phones") as one of its hotlines.

5.      Law enforcement obtained telephone toll records for SEAN Phone 1 from July 2017 through July 2018,[2] and for SEAN Phone 2 from June 2018 through August 2018, and observed a colossal number of communications over each phone, the vast majority of which were incoming communications.  Further, almost all of the calls over the SEAN Phones lasted less than one minute.  Specifically, SEAN Phone 1, during the course of that year-long period, had approximately 62,379 communications, 89% of which were incoming communications.  Approximately 99% of the calls lasted less than one minute.  SEAN Phone 2, during the 3-month period described, had approximately 42,872 communications, 79% of which were incoming communications.  Approximately 97% of the calls lasted less than one minute.

6.      Based on my training and experience and the training and experience of other law enforcement officers with whom I have spoken, I know that this pattern of call activity over a telephone, namely, a very high volume of calls, the vast majority

---

[2] This data does not include any communications during the month of January 2018 and the first half of February 2018.

of which are incoming and last for less than one minute, is consistent with the operation of a hotline for narcotics orders and sales.

7.     From June 2017 to July 2018, undercover law enforcement officers ("UC-1," "UC-2," and "UC-3," collectively, the "UCs") conducted approximately 50 controlled purchases by calling the SEAN Phones and meeting with the narcotics distributors.[3]

8.     Initially, THOMAS CLEVELAND and FREDERICK GILES were the operators of SEAN Phone 1 and were responsible for dispatching the DTO's distributors. Beginning in August 2017, MICHAEL ROBINSON took over that role. Occasionally, other people operated the line. The following individuals, among others, distributed narcotics on behalf of the SEAN DTO to the UCs: MICHAEL ROBINSON, FREDERICK GILES, WILLIE BLAIR, LAWRENCE CLARK, CARDELL COLEMAN, JOLISA GAINES, D'ANGELO GILES, TYRELL KELLY, KEITH MANNING, DEVONTE SMITH, KAJUAN SMITH, and DESMOND WHITE.

9.     In total, over the SEAN Phones alone, defendants distributed and coordinated the distribution of over 582 grams of heroin, 464 grams of which also contained fentanyl, to the UCs.

---

[3] All meetings described in this Affidavit between the UCs and defendants occurring on or after July 10, 2017 were video and audio recorded, and unless otherwise indicated, all calls described in this Affidavit occurring on or after July 10, 2017 were recorded. Meetings that occurred prior to this date were video recorded only, and calls occurring before this date were not recorded. All times for these calls and meetings are approximate.

6

10.     Based on information obtained by the UCs, my review of consensually recorded communications, and the narcotics purchased and seized in this investigation, I know that the narcotics distributed by the SEAN DTO are usually ordered and delivered by the pack or bundle, referred to as a "whole one" or by the cost in dollars ($100 per bundle). Each bundle contains between 11 and 14 individual color-tinted Ziploc bags of white powder, each of which contains approximately 0.2 grams of narcotics, held together by a rubber band. Below are photographs of some of these bundles:



11.     From approximately July 26, 2018, to August 24, 2018, law enforcement officers conducted court-authorized interceptions over SEAN Phone 2 pursuant to an order entered by the Chief Judge of the Northern District of Illinois on or about July 25, 2018.

### 2.     ROBINSON's Use of Telephones in Furtherance of the Narcotics Conspiracy

12.     From August 2017 to July 2018, on multiple occasions, ROBINSON dispatched D'ANGELO GILES, KEITH MANNING, TYRELL KELLY, KAJUAN

SMITH, LAWRENCE CLARK, WILLIE BLAIR, DEVONTE SMITH, and other DTO

members to distribute narcotics to customers (UCs) who ordered narcotics over SEAN

Phone 1.[4]  Fourteen such purchases are detailed in the Complaint at 19 CR 201.

---

[4] ROBINSON dispatched the following individuals to distribute narcotics to the UCs on behalf of the SEAN DTO on the following dates: D. GILES on or about August 17, 2017, August 29, 2017, and again August 29, 2017; MANNING on or about August 29, 2017, September 12, 2017, October 2, 2017, October 9, 2017, again on October 9, 2017, October 24, 2017, November 3, 2017, November 20, 2017, December 4, 2017, December 19, 2017, January 30, 2018, January 31, 2018, and March 22, 2018; KELLY on or about September 21, 2017; K. SMITH on or about September 21, 2017 and December 4, 2017; CLARK on or about October 17, 2017, October 24, 2017, December 19, 2017, and July 27, 2018; BLAIR on or about January 23, 2018, again January 23, 2018, February 6, 2018, February 12, 2018, again February 12, 2018, March 19, 2018, March 25, 2018, and March 28, 2018; D. SMITH on February 4, 2018; F. GILES on July 27, 2018; and an unidentified male on or about June 13, 2018. For the purpose of establishing probable cause, the government has summarized only a subset of these narcotics distributions.

Law enforcement identified ROBINSON as the dispatcher in these calls based in part on the following.

On or about May 24, 2018, law enforcement began intercepting communications over telephone number (773) 886-0321 ("Robinson Phone") pursuant to a court order. Law enforcement identified ROBINSON as the user of Robinson Phone in the following way: Law enforcement obtained location information for the Robinson Phone pursuant to a court order. On or about May 17, 2018, based on this location information, law enforcement established surveillance in the area of a residence located on the 3700 block of 176th Place, Country Club Hills, Illinois. At approximately 10:51 p.m., law enforcement observed ROBINSON exit the residence and walk toward a vehicle in the driveway. Law enforcement identified this individual as ROBINSON in part by comparing his appearance with a photograph of Michael Robinson obtained from a law enforcement database. At that same time, law enforcement placed a call to Robinson Phone and observed ROBINSON retrieve the telephone from his pants pocket and answer the telephone. During the ruse conversation, law enforcement identified ROBINSON's voice as the voice of the user of Robinson Phone, based on previous, judicially-authorized intercepted wire communications over telephone number (773) 759-8337.

Law enforcement then compared the voice of ROBINSON over the Robinson Phone to the voice of the dispatcher in the above-referenced transactions to determine that they were the same voice.

13.     In addition, from approximately July 26, 2018 to August 24, 2018 (the "interception period"), law enforcement officers conducted court-authorized interceptions over SEAN Phone 2 pursuant to an order entered by the Chief Judge of the Northern District of Illinois on or about July 25, 2018.  During this time, ROBINSON was the user of SEAN Phone 2.[5]

14.     Over the course of the interception period, law enforcement intercepted approximately 3,387 pertinent calls from approximately 176 telephone numbers of narcotics customers.  In these calls, customers ordered approximately $109,246 worth of narcotics.  The customers either ordered by price or by number of bundles.

15.     Based on information obtained by the UCs, my review of consensually recorded communications, and the narcotics purchased and seized in this investigation, I know that the narcotics distributed by the SEAN DTO are usually ordered and delivered by the pack or bundle, referred to as a "whole one" or by the cost in dollars ($100 per bundle).  Each bundle contains between 11 and 14 individual color-tinted Ziploc bags of white powder, each of which contains approximately 0.2 grams of narcotics, held together by a rubber band.  This DTO sells heroin, most of which also contains fentanyl.

---

[5] Law enforcement identified ROBINSON as the user of SEAN Phone 2 in part by comparing the voice of the user of SEAN Phone 2 to the voice of ROBINSON observed over SEAN Phone 1.

16.     Therefore, I believe that the $109,246 worth of heroin ordered from ROBINSON over SEAN Phone 2 during the 30-day interception period represents at least 1,092 bundles of heroin, most of which also contained fentanyl. I further believe that each bundle of heroin contains at least 2.2 grams of heroin, for a total of at least 2.40 kilograms of heroin ordered during the 30-day interception period.

17.     Law enforcement seized some of the narcotics ordered from ROBINSON over SEAN Phone 2 during the interception period.

**B.      Law Enforcement Obtained a Court Order on March 5, 2019, to Locate ROBINSON**

18.     On or about March 5, 2019, Chief Judge Ruben Castillo issued an order instructing Verizon and any other communications service provider, as defined in Section 2510(15) of Title 18, United States Code, to assist agents of the Drug Enforcement Administration and the Chicago Police Department by providing all information, facilities and technical assistance to ascertain the physical location of Sean Phone 2 (the "Requested Location Information") for a period of 30 days. A copy of the Application and Order is available upon request. The Order was based on the following probable cause to believe ROBINSON continued to use SEAN Phone 2:

a.      On or about March 5, 2019, at approximately 8:00 a.m., UC-1 called Sean Phone 2 and spoke with Michael ROBINSON. During the conversation, UC-1 stated, "Hey what's up bro, you guys good [do you have narcotics available for sale]?" ROBINSON replied, "Yeah how much [money for narcotics purchase] you got?" UC-1 replied, "Um, I got a whole one [$100]. I'm not going to be able to come in

10

until probably later like six o'clock, you guys still going to be around [still distributing narcotics]?" ROBINSON replied, "Yeah." UC-1 replied, "Yeah, I got enough for a whole one, I'm trying to talk to my boy [narcotics associate] and get like maybe a couple more hundred [put money together for a larger narcotics purchase], uh, I say I at least got a hundred." ROBINSON replied, "Mmm." UC-1 replied, "Alright you just want me to give you a call when I'm coming in? I'll be coming in from Joliet. That cool?" The phone call was then disconnected.

        b.    Immediately after, at approximately 8:01 a.m., UC-1 received a call from ROBINSON, who was using Sean Phone 2. During the conversation, UC-1 stated, "Hey, you guys gonna be cool [have narcotics to distribute] around like six o'clock then?" ROBINSON replied, "Yeah this Patrick?" UC-1 replied, "Yeah it's Patrick." ROBINSON replied, "How much [money] you got?" UC-1 replied, "Uh, well I was saying I got like a hundred now, but I'm going to talk to my boy see if I can get a couple [hundred] more." ROBINSON replied, "Alright."

        c.    Based on my training and experience and on the training and experience of other law enforcement officers with whom I have spoken, I believe that, in the above conversations, ROBINSON used SEAN PHONE 2 to arrange to sell UC-1 at least $100 worth of narcotics on behalf of the SEAN DTO around 6:00 p.m. on or about March 5, 2019.

11

**C.     ROBINSON's Arrest on March 7, 2019**

19.     On or about March 7, 2019, at approximately 7:15 a.m., based on the information provided by Verizon as described in ¶ 25, law enforcement located ROBINSON laying down inside a Jeep Grand Cherokee SRT 8, bearing Illinois registration BC46080[6], parked in front of approximately 5031 W. Congress Parkway, in Chicago, Illinois. ROBINSON was alone inside the Jeep Cherokee.

20.     Law enforcement seized a white and rose gold iPhone Model A1586, bearing FCC ID BCG-E2816A ("**Subject Phone 34**"), from ROBINSON's front pants pocket.

21.     Law enforcement then conducted an inventory search of the Jeep Cherokee pursuant to Chicago Police Department (CPD) seizure policy.  During the inventory search of the Jeep Cherokee, law enforcement located the following telephones:

a.     a black Motorola flip phone Model V860, bearing MSN J686QN32366 ("**Subject Phone 35**"),[7] located in the driver's side door handle pocket.

---

[6] According to the National Law Enforcement Telecommunications System (NLETS), Illinois registration BC46080, is registered to a Gray and Black 2012 Jeep Utility, and registered to a Jorden Shanice Jatiera, 4751 W. Adams Street, Apartment 1, Chicago, Illinois 60644, VIN: 1C4RJFDJXCC152090.

[7] Law enforcement subsequently reviewed the contents of **Subject Phone 35** and determined that the telephone number associated with **Subject Phone 35** is (312) 485-9160. For the purposed of establishing probable cause to obtain a search warrant to search **Subject Phone 35**, the government does not rely on this preliminary search, and requests that the Court also not rely on that information in making its determination of whether probable cause exists to search the **Subject Phone.**

b.       a black and silver Alcatel cellular telephone, bearing serial number HQJE54AP4MWGOM4 (**Subject Phone 36**[8]), located in the center console area underneath the radio.

### D.      Additional Information

22.      Since March 7, 2019, the above-described **Subject Phones** have been in the government's custody.

23.      At the time of arrest, the cellular telephone numbers associated with the **Subject Phones** were not known. As such, the cellular phone numbers and identities of the cellular telephone companies obtained from a search of the **Subject Phones** would enable the government to obtain information from the cellular telephone companies revealing calls made to and from the **Subject Phones** during the course of the commission of the conspiracy to distribute narcotics offenses.

24.      Based on my experience and training, those engaged in narcotics trafficking are often in the possession of cellular telephones because of the need to contact suppliers and customers and to arrange for and facilitate the pickup and delivery of narcotics and/or money. Indeed, here, ROBINSON had used a cellular telephone to arrange a narcotics sale to UC-1 days before his arrest.

---

[8] Law enforcement subsequently reviewed the contents of **Subject Phone 36** and determined that the telephone number associated with **Subject Phone 36** is (312) 774-3322. For the purpose of establishing probable cause to obtain a search warrant to search **Subject Phone 36**, the government does not rely on this preliminary search, and requests that the Court also not rely on that information in making its determination of whether probable cause exists to search **Subject Phone 36.**

25.     Moreover, based on my experience and training, narcotics traffickers will use multiple phones so as to evade detection by law enforcement or otherwise conceal and/or compartmentalize their activities.

26.     At the time of arrest, data stored on the **Subject Phones**, including text and voice mail messages sent and received by the defendants during the course of the commission of the narcotics offenses, were not known.

27.     Based upon my training and experience, I know that cellular phones may contain relevant evidence of the narcotics offenses, including text messages made or received from the **Subject Phones** that are located in the memory of the **Subject Phones**, which messages may provide information regarding the identities of, and the methods and means of operation and communication used by, the participants in the narcotics offenses. Moreover, digital photographs located in the memory of the **Subject Phones** may contain images of the tools or participants involved in the narcotics offenses. Moreover, digital photographs stored in the **Subject Phones** may contain images of the user of the **Subject Phones**, the user's associates (including persons involved in or knowledgeable about the subject offenses), places frequented by the user of the phone leading up to and during the subject offenses, and locations and instrumentalities used in committing the subject offenses.

28.     In addition, based on my training and experience, I know that information stored within a cellular phone may provide crucial evidence of the "who,

14

what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored within a cell phone can indicate who has used or controlled the cell phone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, contacts lists, instant messaging logs, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the cell phone at a relevant time. Further, such stored electronic data can show how and when the cell phone and its related account were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cell phone access, use, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cell phone account owner.

29.     Additionally, information stored within a cell phone may indicate the geographic location of the cell phone and user at a particular time (*e.g.*, location integrated into an image or video sent via email or text message to include both metadata and the physical location displayed in an image or video). Stored electronic data may also provide relevant insight into the cell phone owner's state of mind as it relates to the offense under investigation. For example, information in the cell phone may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an

effort to conceal them from law enforcement). Unless this data is destroyed, by breaking the cell phone itself or by a program that deletes or over-writes the data contained within the cell phone, such data will remain stored within the cell phone indefinitely.

30.      Through experience as a law enforcement officer and through the experience of other law enforcement officers as conveyed to me, I have learned that individuals involved in criminal offenses, including conspiracies to possess and distribute narcotics, commonly use cellular telephones as a means to communicate. Individuals involved in criminal offenses including conspiracies to possess and distribute narcotics, also often store telephone numbers and names or nicknames of fellow conspirators on their telephones and the telephones also reflect recent call history. Finally, individuals often use text messaging and digital photographs in furtherance of their criminal activity that are stored on cellular telephones. Because, as explained above, the **Subject Phones** are associated with the target in this case, because there was telephonic communication between participants involved in the narcotics offenses, and because, in my experience and in the experience of other agents, defendants use telephones to contact co-conspirators, there is probable cause to believe the Subject Phones, described further in Attachment A, contain evidence of violations of narcotics. Most significantly, a location order for SEAN Phone 2, which was used extensively in furtherance of the narcotics conspiracy detailed in 19 CR 201, led law enforcement to ROBINSON's location.

## II. SPECIFICS REGARDING SEARCHES OF ELECTRONIC STORAGE MEDIA

31.    Based upon my training and experience, and the training and experience of specially trained personnel whom I have consulted, searches of evidence from electronic storage media commonly require agents to download or copy information from the electronic storage media and their components, or remove most or all electronic storage media items (*e.g.* computer hardware, computer software, computer-related documentation, and cellular telephones) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a.    Electronic storage media can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b.    Searching electronic storage media for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of an electronic storage media system is an exacting scientific procedure which is designed

17

to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since electronic storage media evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

32.     In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard disk drives or on external media).

33.     In addition, electronic storage media such as a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s) and are subject to seizure as such if they contain contraband or were used to carry out criminal activity.

## III.   PROCEDURES TO BE FOLLOWED IN SEARCHING ELECTRONIC STORAGE MEDIA

34.     Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant will authorize the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol.

35.     The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a.      examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b.      searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c.      surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

d.      opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

19

36.     The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

## IV.  CONCLUSION

37.    Based on the above information, I respectfully submit that there is probable cause to believe that narcotics offenses, in violation of Title 21, United States Code, Sections 841 and 846, have been committed, and that evidence and instrumentalities relating to this criminal conduct, as further described in Attachment B, will be found in the Subject Phones, as further described in Attachment A.I therefore respectfully request that this Court issue a search warrant for the **Subject Phones** more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B, pursuant to the protocol described in the addendum to Attachment B.

FURTHER AFFIANT SAYETH NOT.

Jacob H. Bledsoe
Special Agent
Drug Enforcement Administration

Subscribed and sworn
before me this 25th day of March, 2019

Honorable JEFFREY COLE
United States Magistrate Judge

21

## **ATTACHMENT A**

## **DESCRIPTION OF ITEMS TO BE SEARCHED**

A white and rose gold iPhone Model A1586 bearing FCC ID BCG-E2816A ("**Subject Phone 34**");

A black Motorola flip phone Model V860, bearing MSN J686QN3236 ("**Subject Phone 35**"); and

A black and silver Alcatel cellular telephone, bearing serial number HQJE54AP4MWGOM4 ("**Subject Phone 36**")

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Evidence and instrumentalities concerning violation of Title 21, United States Code, Sections 841 and 846, as follows:

1.     All records of telephone calls, text messages, SMS messages, picture messages, voicemails stored within the device, contact lists and phonebook, recent call activity, electronically formatted personal notes, photographic or video images, audio recordings, application data, browser history data, or records of appointments and/or reminders annotated on a calendar relating to the above-mentioned violations, or reflecting the identity of the user of the **Subject Phones**.

2.     Any SIM card located within the **Subject Phones** that helps to identify the cellular telephone number associated with the phones.

## ADDENDUM TO ATTACHMENT B

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant authorizes the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol:

The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a.  examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b.  searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c.  surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B; and

d.  opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

AO 93 (Rev. 11/13) Search and Seizure Warrant                              AUSA Christine M. O'Neill, (312) 353-4305

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:

The three cellular telephones, further described in
Attachment A

Case Number: **19 M 2 0 6**

## SEARCH AND SEIZURE WARRANT

To: Jacob H. Bledsoe and any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of
the following person or property located in the Northern District of Illinois:

### See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person
or property described above, and that such search will reveal:

### See Attachment B

**YOU ARE HEREBY COMMANDED** to execute this warrant on or before <u>April 8, 2019</u> in the daytime (6:00
a.m. to 10:00 p.m.).

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property
taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the
place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an
inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate
Judge.

2:45. PM

Date and time issued: <u>March 25, 2019</u>

_____
*Judge's signature*

City and State: <u>Chicago, Illinois</u>

JEFFREY COLE, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13)  Search and Seizure Warrant (Page 2)

## Return

| Case No: | Date and Time Warrant Executed: | Copy of Warrant and Inventory Left With: |
|---|---|---|
|  |  |  |

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

## DESCRIPTION OF ITEMS TO BE SEARCHED

A white and rose gold iPhone Model A1586 bearing FCC ID BCG-E2816A ("**Subject Phone 34**");

A black Motorola flip phone Model V860, bearing MSN J686QN3236 ("**Subject Phone 35**"); and

A black and silver Alcatel cellular telephone, bearing serial number HQJE54AP4MWGOM4 ("**Subject Phone 36**")

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Evidence and instrumentalities concerning violation of Title 21, United States Code, Sections 841 and 846, as follows:

1.      All records of telephone calls, text messages, SMS messages, picture messages, voicemails stored within the device, contact lists and phonebook, recent call activity, electronically formatted personal notes, photographic or video images, audio recordings, application data, browser history data, or records of appointments and/or reminders annotated on a calendar relating to the above-mentioned violations, or reflecting the identity of the user of the **Subject Phones**.

2.      Any SIM card located within the **Subject Phones** that helps to identify the cellular telephone number associated with the phones.

## ADDENDUM TO ATTACHMENT B

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant authorizes the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol:

The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

    a.    examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

    b.    searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

    c.    surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B; and

    d.    opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.